[811 NYS2d 5]

CAROLINE VELEZ, as Guardian of the Person and Property of RAMON S. VELEZ, an Incompetent, Respondent, v HUNTS POINT MULTI-SERVICE CENTER, INC., Defendant and Third-Party Plaintiff-Appellant. RAMON S. VELEZ FAMILY TRUST, Third-Party Defendant-Respondent. SOUTH BRONX COMMUNITY MANAGEMENT COMPANY, INC., et al., Nonparty Respondents.

First Department, February 9, 2006

---

**APPEARANCES OF COUNSEL**

*Rivkin Radler LLP*, Uniondale (*Jeffrey D. Fields, Evan H. Krinick* and *Cheryl F. Korman* of counsel), for appellant.

*Underweiser & Underweiser*, White Plains (*Barry L. Mendelson, Irwin P. Underweiser* and *Jeffrey B. Underweiser* of counsel), for Caroline Velez and Ramon S. Velez Family Trust, respondent.

*Anthony E. Core, P.C.*, Westbury (*Anthony E. Core* and *Jacqueline M. Caputo* of counsel), and *Goldberg* and *Weinberger*, Redding, Connecticut (*Lewis Goldberg* of counsel), for nonparty respondents.

**OPINION OF THE COURT**

ANDRIAS, J.P.

The principal issue on this appeal is whether, in the circumstances presented, the motion court properly granted motions to quash certain nonparty subpoenas duces tecum on the ground that they were defective on their face because they failed to comply with CPLR 3101 (a) (4), which requires that a request for disclosure from "any other person," i.e., a nonparty witness, be "upon notice stating the circumstances or reasons such disclosure is sought or required." For the following reasons, we reverse the motion court's order to the extent appealed from and hold that the motions to quash the subpoenas should have been denied in all respects.

This is an action by the guardian of the person and property of Ramon S. Velez, the founder and former president and chief executive officer of defendant and third-party plaintiff Hunts

Point Multi-Service Center (Hunts Point), a not-for-profit corporation formed in 1968 to deliver various health-related and other services to the poor in the South Bronx. The suit includes claims for, among other things, breach of contract, an accounting of deferred compensation deposited into a trust account for Mr. Velez, liquidated damages, and breach of Hunts Point's obligation to pay Mr. Velez's medical expenses and retirement benefits.

Hunts Point answered the complaint, denying the material allegations therein, and commenced a third-party action against the Ramon S. Velez Family Trust, established by the members of Mr. Velez's family, in which it alleges, inter alia, that Mr. Velez engaged in various acts of self-dealing and malfeasance, including improper maintenance of time records and misuse of corporate funds and credit cards for certain personal expenses for hotels, trips and gifts. According to Hunts Point, Mr. Velez previously obtained substantial payments and benefits from it and now seeks additional compensation based on unverified, inaccurate and unreliable time records, as well as unauthorized benefits and insurance policies for himself and others. It is Hunts Point's position that Mr. Velez forfeited his rights to any deferred compensation, life insurance policies or other benefits, and that Hunts Point is entitled to set aside any unlawful conveyances or wrongful transfers of corporate assets, including any transfers of interests in life insurance policies to the family trust, and to impose a constructive trust on the insurance policies and all proceeds relating thereto. Hunts Point also seeks damages and/or an offset against all amounts sought by plaintiff, plus a return of prior payments made to, or on behalf of, Mr. Velez during the period he breached his fiduciary duties, including disgorgement of assets transferred by Mr. Velez to the family trust.

In March and April 2004, Hunts Point served a total of 13 subpoenas duces tecum on nonparties, including nonparty movants South Bronx Community Management Company (South Bronx), Bronx Computing Systems and Services (Bronx Computing), and Don Pancho Development Corporation (Don Pancho), seeking, inter alia, production of all documents concerning Mr. Velez's relationship to the nonparty movants, any business trips taken by him on behalf of the nonparty movants, and the employment or equity interest of any member of his family in the nonparty movants. The subpoenas also sought all documents regarding any equity interest of Khaimraj Issurdatt,

Hunts Point's former comptroller, and the payment of salary, benefits and dividends to Mr. Issurdatt in connection with his relationship to the nonparty movants. Finally, the subpoenas sought all documents concerning any contracts between the nonparty movants and Hunts Point.

Plaintiff and the Velez Family Trust moved, pursuant to CPLR 3103, for a protective order quashing all 13 nonparty subpoenas issued by Hunts Point on the grounds, inter alia, that the subpoenas were facially defective and thus unenforceable because they did not contain a notice setting forth the reasons why such disclosure was sought, as required by CPLR 3101 (a) (4), and that they lacked specificity and were overly broad in that they contained "scattergun demands for all manner of records without showing any relationship to the issues framed by the pleadings in this action."

In opposition, Hunts Point maintained that the documents sought from the nonparties were necessary and material to prove that Mr. Velez was not entitled to hundreds of thousands of dollars of compensation and benefits that he sought in the lawsuit, and were further necessary to provide specific documentary support for its affirmative defenses and counterclaims that Mr. Velez was liable to it for damages and forfeiture of compensation and benefits due to his actions and omissions as president of Hunts Point.

Thereafter, by notice of motion dated May 18, 2004, nonparties South Bronx, Bronx Computing and Don Pancho also moved pursuant to CPLR 2304 to quash the subpoenas served upon them on the additional grounds that they were unduly burdensome, lacked the requisite specificity and inappropriately sought to broaden the scope of discovery, citing Hunts Point's failure to meet its burden of showing inability to obtain the records otherwise, i.e., "special circumstances." Hunts Point responded, inter alia, that the records sought were relevant to show that Mr. Velez was conducting the business of the nonparty movants and not Hunts Point and that he or his family members worked for the nonparty movants with which Hunts Point had contractual relationships. It also asserted that the subpoenaed records were critical to its defenses and counterclaims especially in light of the fact that Mr. Velez suffers from Alzheimer's disease and will be unable to provide any testimony regarding the subjects of the subpoenas and that plaintiff claims to have no knowledge or documents regarding these issues critical to its defense and counterclaims.

By "so ordered" stipulation dated June 30, 2004, the nonparty movants agreed, inter alia, to provide within 30 days documents regarding positions held by any Velez and Issurdatt family members, business transactions between the nonparties and Hunts Point, and business trips taken by Ramon S. Velez. The court was left to decide whether the nonparty movants must provide compensation records for Mr. Velez, his son, daughter and wife, and Mr. Issurdatt.

The motion court, finding that none of the subpoenas served by Hunts Point provide the notice required by CPLR 3101 (a) (4) to the nonparties from whom discovery is sought and are thus facially invalid, granted plaintiff's and the family trust's motion and quashed the subpoenas served on all nonparties, except those that had already been complied with during the pendency of the motion. The court also granted the remainder of the nonparty movants' motion to quash the portions of the subpoenas seeking to discover compensation records for Mr. Velez's family and for Mr. Issurdatt on the ground that such records, regardless from whom they are requested, are patently irrelevant. However, it denied that portion of the nonparty movants' motion seeking to quash the portion of the subpoenas that sought discovery of compensation records for Mr. Velez.

Hunts Point now appeals from so much of the order as granted the motions to quash the nonparty subpoenas duces tecum served upon South Bronx, Bronx Computing and Don Pancho insofar as they sought all records showing the compensation received by Mr. Velez and his family members and Mr. Issurdatt, and quashed in their entirety all other nonparty subpoenas duces tecum (excluding those already complied with).

CPLR 3101 (a), which establishes the broad scope of disclosure in CPLR article 31 and mandates full disclosure of all matter material and necessary in the prosecution or defense of an action, "sounds the keynote for the entire article and has pervasive bearing on all of it" (Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:1). Unless otherwise provided by the CPLR or the court, the normal method of obtaining disclosure from parties to an action, for instance, depositions upon oral questions, shall be by stipulation or on notice without leave of the court (CPLR 3102 [b]).

For disclosure purposes, a party is distinguished from a nonparty and where disclosure is sought against a nonparty more stringent requirements are imposed on the party seeking disclosure (see Connors, Practice Commentaries, CPLR

C3101:19). Thus, where the person to be deposed is not a party, he or she must be served with a subpoena issued pursuant to CPLR 3106 (b). Where production of "books, papers and other things" is also sought in conjunction with his or her deposition, a notice or subpoena pursuant to CPLR 3111 is the appropriate device, and the party serving the subpoena should describe the items sought and be certain to make the subpoena unambiguous, requiring both attendance by the recipient and production of the item. If the party seeking the disclosure is not interested in taking a deposition, but merely wants a nonparty witness to produce for discovery and inspection a paper or other tangible item in his or her possession, the remedy is an outright subpoena under CPLR 3120 (*see* Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3111:1).

Prior to 2003, although a nonparty witness could be deposed simply by service of a subpoena with the requisite notice of the circumstances or reasons why such disclosure was sought, a subpoena duces tecum requiring production of documents to be used in conjunction with such deposition was not sufficient. A motion on notice was required by former CPLR 3120 (b) to obtain nonparty document discovery (*see Wilson v City of Buffalo*, 298 AD2d 994, 997 [2002], *lv denied* 99 NY2d 505 [2003]). Such subpoena would also be defective where it did not contain nor was it accompanied by a notice required by CPLR 3101 (a) (4) (*id.*; *see also Knitwork Prods. Corp. v Helfat*, 234 AD2d 345 [1996]; *De Stafano v MT Health Clubs*, 220 AD2d 331 [1995]).

In order to simplify the methods for obtaining discovery of documents, particularly routine business records, from nonparty witnesses, with the consequent effect of alleviating the burden upon the litigants, the nonparty witnesses and the courts, CPLR 3120 was amended, effective September 1, 2003 (L 2002, ch 575, § 2). The amendments dispense with the requirement of a motion and now simply require service of a subpoena duces tecum on a nonparty witness for production of any designated documents in the possession, custody or control of the nonparty served, specifying the time, place and manner of making the inspection, copy, test or photograph, and setting forth individually or by category the items to be inspected and describing each item and category with reasonable particularity. Nothing in the amendments to CPLR 3120, however, dispenses with the general requirement of CPLR 3101 (a) (4) that, where disclosure is sought from a nonparty, the nonparty shall be given notice stating the circumstances or reasons such disclosure is sought

or required. The purpose of such requirement is presumably to afford a nonparty who has no idea of the parties' dispute or a party affected by such request an opportunity to decide how to respond.

The amendments were also intended to bring to an end the unauthorized but longstanding practice, condemned by this Court in *Matter of Weinberg* (129 AD2d 126 [1987]), of serving upon a nonparty a subpoena for a deposition and following that up with an informal suggestion that the witness could avoid appearing at the deposition by mailing copies of the documents described in the subpoena to the attorney serving the subpoena (*see* Simplification of Discovery and the Use of Non-Party Business Records, 2002 Report of Advisory Comm on Civ Prac to Chief Administrative Judge of Cts of State of NY, 2002 McKinneys Session Laws of NY, at 2164).

Such salutary revisions, however, do not fully resolve the matter before us because there is nothing in the subpoenas issued in this action to indicate whether they were being issued pursuant to CPLR 3111 in connection with the production of documents at a pretrial deposition or pursuant to CPLR 3120 merely for the production of documents. They are all couched in language suitable for a subpoena duces tecum served pursuant to CPLR 3111, demanding the nonparties to appear and produce documents. However, with one exception, they include at the end a statement, in bold print, that no personal appearance is required. Since both sides in their papers below and in their briefs on appeal treat all the subpoenas the same, the failure to include such notice in the subpoena served upon nonparty Bronx Computing Systems and Services appears to have been an oversight. Nevertheless, while subpoenas issued pursuant to CPLR 3111 and 3120 are apparently still used interchangeably by many attorneys, they have different purposes and there are differences in the response required of the subpoenaed person.

CPLR 3103 provides for a protective order that can be used to limit, condition or regulate the disclosure device used, while CPLR 2304 provides for a motion to quash, fix conditions or modify a subpoena. However, a nonparty served with a CPLR 3120 subpoena is required to object in writing within 20 days, stating "with reasonable particularity the reasons for each objection" (CPLR 3122 [a]). In such case, the burden then falls upon the party serving the subpoena to move pursuant to CPLR 3124 or 2308 (b) to compel compliance with the subpoena. Nevertheless, simple as those differences may seem, there appar-

ently is nothing to prevent a nonparty served with an excessively overbroad CPLR 3120 subpoena or a party affected by such subpoena from moving for a protective order pursuant to CPLR 3103 (*see* Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3103:3).

Here, however, it was only in response to the motion by the plaintiff and the third-party defendant for a protective order quashing the subpoenas served on the nonparties that Hunts Point invoked CPLR 3120 and argued that rule 3120 contains no requirement that a subpoena include the notice required by CPLR 3101 (a) (4), and that such notice appears to be applicable only to subpoenas requiring deposition testimony, which is not the case here.

In quashing the subpoenas as facially invalid, the motion court, relying on this Court's decision in *De Stafano v MT Health Clubs* (220 AD2d 331 [1995], *supra*), held that although Hunts Point eloquently articulated the need for the discovery sought, such notice was provided to the court and not the nonparties from whom discovery is sought. Consequently, the court held that notice must be given to those subpoenaed. However, whether the motion court could have permitted the omissions to be corrected was a question the *De Stafano* court did not reach since no such relief was sought. Here, on the other hand, Hunts Point, citing *De Stafano*, requested such relief, albeit in a footnote to its opposing papers.

Accordingly, we now reach the question and hold that the CPLR 3101 (a) (4) notice requirement applicable to subpoenas duces tecum issued pursuant to CPLR 3111 is equally applicable to nonparty subpoenas issued pursuant to CPLR 3120. Nevertheless, although the better practice, indeed the mandatory requirement of CPLR 3101 (a) (4), is to include the requisite notice on the face of the subpoena or in a notice accompanying it, given the evidence presented by Hunts Point in opposition, the motions to quash the subpoenas should have been denied (*cf. Matter of Stevens Imports v Lack*, 52 AD2d 928 [1976], *affd* 41 NY2d 939 [1977]). The motion court's findings, that Hunts Point's papers articulated the need for the discovery sought and that "the majority of the items sought are relevant to the defense of the litigation herein" and are "not so voluminous so as to constitute an undue burden on the custodians of said documents," were sufficient to grant such relief absent any apparent prejudice to the nonparties served.

As to the court's concern with the lack of notice to the nonparties from whom discovery is sought, if such nonparties, who

have the burden of delineating any specific reasons why the requirement in CPLR 3101 (a) (4) is not satisfied, do not object and the disclosure goes forward, such extra requirement is, in effect, waived (*see* Connors, Practice Commentaries, CPLR C3101:23). Likewise, plaintiff and third-party defendant have failed in their burden of showing lack of relevance and that part of their motion seeking to quash the subpoenas served on South Bronx, Bronx Computing and Don Pancho, seeking records of payments made to Mr. Issurdatt and Mr. Velez's family members, should also have been denied.

It is well settled that the purpose of a subpoena duces tecum is to compel the production of specific documents that are relevant and material to facts at issue in a pending judicial proceeding (*see Matter of Terry D.*, 81 NY2d 1042, 1044 [1993]). It is equally well settled that a motion to quash a subpoena duces tecum should be granted only where the materials sought are utterly irrelevant to any proper inquiry (*see New Hampshire Ins. Co. v Varda, Inc.*, 261 AD2d 135 [1999]; *Matter of Reuters Ltd. v Dow Jones Telerate*, 231 AD2d 337, 341 [1997]). "Moreover, the burden of establishing that the requested documents and records are utterly irrelevant is on the person being subpoenaed" (*Gertz v Richards*, 233 AD2d 366, 366 [1996]).

Plaintiff, the third-party defendant and the nonparty movants have failed to demonstrate that the nonparty movants' compensation records for Mr. Velez's family members and Mr. Issurdatt were utterly irrelevant. Rather, the compensation records sought by Hunts Point pertain to Mr. Issurdatt, the former comptroller of Hunts Point; Ramon Velez, Jr. (Mr. Velez's son), the president of South Bronx, which is the parent company of Bronx Computing; and Caroline Velez (Mr. Velez's wife and plaintiff herein), an executive with South Bronx. Hunts Point correctly argues that since this action involves alleged malfeasance on the part of Mr. Velez, the salaries of his son and wife are very material to its affirmative defenses and counterclaims that Mr. Velez breached his fiduciary duties to Hunts Point. The compensation records of Mr. Velez's wife and son at companies with which Mr. Velez caused Hunts Point to contract may, at the very least, serve to demonstrate the extent of Mr. Velez's personal interest in those entities and any possible breach of his fiduciary duty to Hunts Point.

For example, Hunts Point contracted with Bronx Computing (a subsidiary of South Bronx) for the provision of certain data processing services and allegedly leased premises in buildings

managed by South Bronx. Mr. Velez's son ran South Bronx and Mr. Velez's wife also worked there in an executive position. Furthermore, in response to one of the subpoenas, Metropolitan Life Insurance Company produced life insurance policies on the life of Mr. Velez, and one of the policies, which was for over $1.5 million with a cash surrender value of $579,000, was paid for by South Bronx, thus demonstrating, at the very least, that Mr. Velez had a beneficial interest in South Bronx while Hunts Point had contracts with South Bronx and its subsidiary, Bronx Computing. Hunts Point also alleges that Mr. Velez and/or his family members had an equity or employment interest in Don Pancho and that Hunts Point leased real estate from Don Pancho.

Thus, given the foregoing uncontested allegations, Hunts Point is entitled to the requested records from South Bronx, Bronx Computing and Don Pancho in order to establish to what extent Mr. Velez and his family members profited or received benefits from those entities while Hunts Point had contracts with them. Mr. Velez's family members' compensation records are highly relevant because they can show the extent to which those family members were profiting by his alleged breach of fiduciary duty when he and Mr. Issurdatt purportedly steered business to these entities for their own personal financial gain and that of the Velez family. Since the subpoenas directed to the nonparty movants are aimed at production of compensation records critical to proving Hunts Point's defenses and counterclaims, it cannot be said that such records are utterly irrelevant. Rather, the records sought are material and necessary to the facts at issue in this lawsuit.

Finally, we note that the purpose of the amendments to CPLR 3120 was to take the issue of compliance out of the courts as much as possible and place the burden on the parties and nonparties involved to work out their differences. In this instance, the simple and better solution would seemingly have been for the nonparties served or the parties objecting to the form of the subpoenas to notify the party issuing the subpoenas of the defect (lack of the requisite notice), in which event the party issuing the subpoena could have served new subpoenas with the requisite notice rather than burden their clients and the courts with the time and expense of litigating the issue of the form of the subpoenas. All affected could then address the substance of their objections, if any, to the subpoenas' demands in an appropriate manner.

Accordingly, the order of the Supreme Court, Bronx County (Nelson S. Roman, J.), entered on or about January 7, 2005, which, insofar as appealed from as limited by the briefs, granted the motions of plaintiff and third-party defendant and the nonparty movants to quash certain nonparty subpoenas duces tecum served upon South Bronx Community Management Company, Bronx Computing Systems and Services, and Don Pancho Development Corporation in search of records showing the compensation received by Ramon S. Velez and his family members and Khaimraj Issurdatt, defendant's former comptroller, and quashed in their entirety all other nonparty subpoenas duces tecum (excluding those already complied with), should be reversed, on the law, the facts and in the exercise of discretion, without costs, the motions denied and the nonparty witnesses directed to comply with the subpoenas within 20 days of service upon them of a copy of this Court's order with notice of entry.

FRIEDMAN, SULLIVAN and MALONE, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about January 7, 2005, reversed, on the law, the facts and in the exercise of discretion, without costs, the motions of plaintiff and third-party defendant and the nonparty movants to quash certain nonparty subpoenas duces tecum denied and the nonparty witnesses directed to comply with the subpoenas within 20 days of service upon them of a copy of this Court's order with notice of entry.