OPINION OF THE COURT
Michael D. Stallman, J.
Defendant attorneys move to compel a nonparty former client, Gramercy Advisors, LLC and its related entities, to comply with a subpoena duces tecum. This motion raises novel issues concerning the attorney self-defense exception to the attorney’s duty of confidentiality.
Background
In this legal malpractice action, plaintiff Marc Hélie claims that defendant John J. Sullivan, a partner in the law firm of defendant McDermott, Will & Emery, failed to disclose an alleged conflict of interest while Sullivan was allegedly representing plaintiff and acting as outside corporate counsel to Gramercy Advisors, LLC and related entities. Plaintiff alleges that, in June 1998, Sullivan represented him in connection with the formation of Gramercy Advisors, LLC and related entities. In January 2000, nonparty Jay Johnston purchased a 30.43% interest in the business, which resulted in amendments to Gramercy’s original operating agreement. Plaintiff alleges that, during the drafting of those amendments, Sullivan allegedly advised plaintiff that, in the event of plaintiffs resignation, his resignation would not be considered “an event of dissociation” under the operating agreement, which would trigger a payment based on a specified formula. Plaintiff alleges that Sullivan advised plaintiff that his interest in Gramercy upon resignation would reflect current market value. Plaintiff claims that, on the basis of that advice, Hélie executed the revised operating agreement. Plaintiff claims that, during the drafting process and in rendering the alleged advice, Sullivan was acting as plaintiffs attorney.
Defendants assert that they acted as outside counsel to Gramercy Financial Group, LLC, which operates and manages hedge funds, and other related entities, Gramercy Financial Advisory Services LLC, Gramercy Financial Products LLC, KSHER AA LLC, RMJ Capital Management LLC and Steamboat Capital Management LLC (collectively, Gramercy). Defendants maintain *675 that they acted only as Gramercy’s attorneys, and not as plaintiffs attorneys, in revising Gramercy’s operating agreements.
By a confidentiality agreement and order dated March 5, 2007, the parties and Gramercy established a framework for handling confidential information of Gramercy, as defined in the confidentiality agreement. In sum, the confidentiality agreement permits the parties and their respective counsel to use and disclose Gramercy’s confidential information for this action only, and to return the confidential information and all copies to Gramercy upon termination of this action. The parties and Gramercy agreed that all electronic copies of the confidential information will be permanently deleted. The confidential information could be disclosed to, among others, a party or to persons employed by or associated with the parties’ respective counsel, except as to certain documents designated “Attorneys’ Eyes Only.” If any party wishes to use Gramercy’s confidential information in documents filed with the court or during a trial of this action, then Gramercy and the parties will attempt to agree on a method to protect it. The confidentiality agreement and order did not address disclosure of any documents protected by the attorney-client privilege or by the attorney’s duty of confidentiality.
By decision dated June 25, 2007, this court granted defendants’ motion to permit Sullivan to testify at his deposition regarding certain topics, and to produce certain attorney handwritten notes, notwithstanding Gramercy Advisors, LLC’s assertion of the attorney-client privilege. Such discovery bears on the issue of whether plaintiff had an attorney-client relationship with defendants.
Now before the court is defendants’ motion to compel Gramercy to comply with a subpoena duces tecum dated September 29, 2006 to produce certain documents (see Martin-son affirmation, exhibit C) which bear on plaintiffs contention that, due to defendants’ alleged malpractice, the value of Gramercy declined, causing him injury. Gramercy objected to the subpoena, on the grounds that the requests are burdensome, overbroad, neither relevant nor calculated to lead to discovery, are privileged, and more readily obtainable from other sources. (See id., exhibits B, D.)
Defendants claim the subject subpoena and the documents it seeks are necessary to determine, among other things, (1) whether a document upon which plaintiff relies shows a fair *676 and reasonable valuation of plaintiffs interest in Gramercy, and (2) what payments would have resulted from the valuation methods plaintiff claims were agreed to between him and Gramercy. Defendants maintain that they have sought the financial information of Gramercy from plaintiff, but the information was not complete, and that they have no choice now but to seek that information from Gramercy.
Nonparty Gramercy Financial Group, LLC opposes the motion, arguing that the court should require plaintiff to establish a prima facie basis for his claims before ordering Gramercy to comply with the subpoena.[1] Gramercy contends that the documents contain proprietary business information, and reflect confidences and secrets communicated by Gramercy to defendants during the course of defendants’ representation of Gramercy. (O’Shea opposing affirmation f 13.) Gramercy also claims that it offered to produce additional confidential, responsive Gramercy documents had the parties agreed to a confidentiality agreement containing a provision for liquidated damages, which was rejected. (Id. ¶ 15.)
I.
As a threshold matter, the court rejects Gramercy’s argument that the motion should be denied because the subpoena lacked the notice required under CPLR 3101 (a) (4). A court may permit the omitted notice to be corrected in the absence of any apparent prejudice to the nonparty served. (See Velez v Hunts Point Multi-Serv. Ctr., Inc., 29 AD3d 104, 111 [1st Dept 2006].) The purpose of the requirement of CPLR 3101 (a) (4) is “presumably to afford a nonparty who has no idea of the parties’ dispute or a party affected by such request an opportunity to decide how to respond.” (Ibid, at 110.) Here, Gramercy is no stranger to the dispute between plaintiff and defendants, and defendants represented Gramercy in dealing with plaintiff. This is not a situation in which a nonparty witness did not understand why documents containing confidential information were *677 being sought, and it had no idea how to respond to a party’s subpoena. Gramercy has not shown prejudice as a result of the subpoena’s noncompliance with CPLR 3101 (a) (4). Defendants articulated the need for the documents in their moving papers, the court held several conferences about this motion with the parties and Gramercy, and gave them opportunities both to resolve the dispute and for the submission of additional papers, thus remedying the asserted lack of notice.[2]
“[A] motion to quash a subpoena duces tecum should be granted only where the materials sought are utterly irrelevant to any proper inquiry. ‘Moreover, the burden of establishing that the requested documents and records are utterly irrelevant is on the person being subpoenaed’.” (Velez, 29 AD3d at 112 [citations omitted].)
Gramercy has not met its burden of establishing that the requested documents are utterly irrelevant. As defendants indicate, the documents subpoenaed are relevant or reasonably calculated to lead to admissible evidence on the issue of whether plaintiff suffered any injury as a result of defendants’ alleged malpractice, and the extent of plaintiffs alleged damages.[3]
*678 II.
A.
The analysis of whether defendants are entitled to the subpoenaed documents does not end with a determination of their relevance. Gramercy opposes defendants’ use of the subpoenaed documents, citing Code of Professional Responsibility DR 4-101 (b) (22 NYCRR 1200.19 [b]). However, as long as Gramercy’s reasonable interest in keeping its confidences and secrets private is satisfied, it has a responsibility to comply with the September 29, 2006 attorney subpoena, which seeks relevant evidence. Gramercy, as a nonparty witness — irrespective of its prior attorney-client relationship with defendants, its former attorneys — must cooperate with lawful process subject to appropriate safeguards.
Gramercy’s interest in maintaining confidentiality might have been protected by a confidentiality order more stringent than the confidentiality agreement of March 5, 2007.[4] (See Fox v Fox, 290 AD2d 749 [3d Dept 2002].) In Fox v Fox, the plaintiff wife sought to compel her defendant husband, an attorney, to produce his client files, so that her expert could review the files in order to conduct his valuation of the defendant husband’s law practice, relevant to equitable distribution. The defendant husband objected to discovery on the grounds of attorney-client privilege. The court compelled production, agreeing with plaintiff wife that “sufficient safeguards can be put in place so as to preserve the confidentiality of client-attorney communications and prevent any violation of Code of Professional Responsibility DR 4-101.” (Id. at 752.) The plaintiff wife agreed to guidelines contained in the appendix to a law journal article, mirroring conditions imposed by the court in Frink v Frink (129 Misc 2d 739, 740-741 [Sup Ct, Dutchess County 1985]; see Tiso, Are Contingency Fee Cases Part of the Marital or Communal Estate?, 15 J Am Acad Matrim Law 391, 409-410 [1998]).
However, the parties and Gramercy do not have a confidentiality agreement in place that is as stringent as in Fox or Frink. Unlike the confidentiality provisions set forth in the Tiso article, the confidentiality agreement of March 5, 2007 does not set forth the conditions under which the confidential information *679 would be examined, does not permit removal of certain information from examination or use of fictitious references in place of certain actual information (such as names), and it does not provide for the manner in which the confidential information may be used or disclosed during the trial. Despite court intervention, the parties and Gramercy were unable to reach an agreement on the use of any confidential information, because they could not reach consensus on a procedure for dealing with alleged violations, imposing consequences, and allocating expenses and attorneys’ fees. Finally, unlike Fox and Frink, which were matrimonial actions, the file in this action is not sealed, and no motion was made to seal the entire file.
B.
Code of Professional Responsibility DR 4-101 (b) (22 NYCRR 1200.19 [b]) states,
“Except when permitted under section 1200.19(c) of this Part, a lawyer shall not knowingly:
“(1) reveal a confidence or secret of a client;
“(2) use a confidence or secret of a client to the disadvantage of the client; and
“(3) use a confidence or secret of a client for the advantage of the lawyer or of a third person, unless the client consents after full disclosure.”
“The Code of Professional Responsibility thus imposes a continuing obligation on attorneys to protect their clients’ confidences and secrets. Even after representation has concluded, a lawyer may not reveal information confided by a former client, or use such information to the disadvantage of the former client or the advantage of a third party.” (Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 130 [1996].)
At first blush, DR 4-101 (b) does not appear to apply here, because defendants are seeking a court order directing Gramercy to comply with defendants’ subpoena. Because Gramercy is not an attorney (and because a client is ordinarily free to decide to waive privilege and reveal confidences or secrets), DR 4-101 (b) does not bar Gramercy from revealing its own confidences and secrets to comply with the subpoena. However, some authority supports the proposition that a current or former client may invoke DR 4-101 (b) as a ground to prevent an attorney from taking legal action against the client, if such action would lead *680 to a violation of DR 4-101 (b). (See Wise v Consolidated Edison Co. of N.Y., 282 AD2d 335 [1st Dept 2001].) In Wise, the plaintiff commenced an action against the defendant for wrongful discharge from his position as in-house counsel to the defendant. The Appellate Division, First Department, affirmed the lower court’s decision granting the defendant’s motion to dismiss the action because, among other reasons, “permitting the action to go forward would entail the improper disclosure by plaintiff. . . of client confidences, including specific corporate tax strategies.” (Id. at 335.)
Here, enforcement of defendants’ subpoena would lead to use and/or revelation of the information obtained from subpoenaed documents. After all, there is no point to directing the documents to be produced if they cannot be used, and it appears that defendants intend to use the documents in connection with depositions of Gramercy. Whether enforcement of the subpoena will result in improper revelation or use of any confidence or secret of Gramercy presents a two-fold inquiry: (1) whether the information sought constitutes confidences or secrets, and (2) whether an exception under Code of Professional Responsibility DR 4-101 (c) (22 NYCRR 1200.19 [c]) applies.
C.
Code of Professional Responsibility DR 4-101 (a) (22 NYCRR 1200.19 [a]) states,
“Confidence refers to information protected by the attorney-client privilege under applicable law, and secret refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client.”
There is no dispute that the documents sought could constitute secrets, because the documents sought are financial information. “The client’s financial information normally constitutes a secret.” (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29, Judiciary Law, Code of Professional Responsibility DR 4-101, at 70.) However, defendants maintain that the documents subpoenaed were not acquired during their attorney-client relationship with Gramercy. Gramercy contends that the information sought from Gramercy reflects confidences or secrets communicated by Gramercy to defendants during the course of defendants’ representation of Gramercy.
*681 “[F]actual information obtained before a representation begins or after it ends falls outside the reach of DR 4-101-(A). Similarly, information obtained during a professional relationship, but not because of the professional relationship, is outside the scope of DR 4-101 (A).” (Simon’s New York Code of Professional Responsibility Annotated, at 554 [2007 ed].) The issue is not whether the documents were provided during the attorney-client relationship, but rather whether the information sought was gained in the relationship. Thus, “if the lawyer learns the information outside . . . the professional relationship and reviews it with the client during the professional relationship, the information may qualify as a secret . . . .” (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29, Judiciary Law, Code of Professional Responsibility DR 4-101, at 69.)
The subpoena seeks some documents the existence of which, arguably, could only have been gained in defendants’ relationship with Gramercy.[5] Other requests are framed more generally. Defendants do not identify any specific documents that they contend would not contain information learned during the attorney-client relationship. To the extent that there are issues as to whether the information contained in a particular document constitutes client secrets protected under DR 4-101 (b), it would be burdensome and impracticable for the court to review each subpoenaed document, which would likely require a protracted inquiry (probably a hearing), which would likely result in disclosure. Thus, for the purposes of this motion, the court will assume that all of the subpoenaed documents contain client secrets.
D.
Code of Professional Responsibility DR 4-101 (c) (22 NYCRR 1200.19 [c]) sets forth five circumstances under which a lawyer may use or disclose a client’s confidences or secrets. At issue here is DR 4-101 (c) (4), the attorney self-defense exception, which states that “[a] lawyer may reveal: ... (4) Confidences or secrets necessary to establish or collect the lawyer’s fee or to defend the lawyer or his or her employees or associates against *682 an accusation of wrongful conduct.” (22 NYCRR 1200.19 [c] [4].) The court discussed the applicability of the self-defense exception in its decision dated June 25, 2007. Much of that analysis applies here. Defendants set forth a compelling case for invoking the attorney self-defense exception here, as they did on the prior motion. Without the attorney self-defense exception, defendants would not be entitled to the subpoenaed documents, because enforcement of the subpoenaed documents would lead to use or disclosure of Gramercy’s secrets.
However, “the right to part the curtain of confidentiality must be sparingly applied. It extends only to the bare minimum ‘necessary to accomplish [its] purpose.’ ” (General Realty Assoc. v Walters, 136 Misc 2d 1027, 1029 [Civ Ct, NY County 1987], quoting Assn of Bar of City of NY Comm on Prof Ethics Op 79-63.) The duty of confidentiality “is the most important rule in the Code [of Professional Responsibility] and serves as the cornerstone for the majority of the other disciplinary rules.” (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29, Judiciary Law, Code of Professional Responsibility DR 4-101, at 63.)
Given that the exceptions to the duty of confidentiality should be applied only when necessary, the issue arises as to whether the documents demanded should be produced at this time. Gramercy argues that the court should bifurcate the issues of liability and damages for trial and limit discovery accordingly {see Gramercy opposing mem at 26-27). If plaintiff cannot establish defendants’ liability, then the information sought from Gramercy, which bears on the issue of plaintiffs damages, need not be obtained. The court would therefore not need to address the issue of whether the attorney self-defense exception applies.
As plaintiff and defendants aptly indicate, the issue of whether plaintiff suffered any injury is inextricably intertwined with the issue of damages, given that the alleged injury is a diminution in the value of plaintiff’s interest in Gramercy. Actual injury is an element of liability in a cause of action for legal malpractice; bifurcating all the issues of liability to be tried separately before trying damages would thus be inefficient and would greatly increase the cost of litigation, which could not be justified under the circumstances presented.
Gramercy also proposes an in camera inspection, which is not workable. The documents sought are relevant to the issues of valuation of a hedge fund and related entities, an area of specialized expertise not within the court’s knowledge. Only an *683 expert specialized in such valuations would be able to determine what information among the documents sought is relevant to an expert valuation of Gramercy, and what information can be redacted. Even assuming, for purposes of discussion, that an expert in camera inspection could be performed, there would likely be sensitive information about Gramercy that cannot be redacted and that would be disclosed to defendants and to plaintiffs counsel.
Next, Gramercy urges the court to require plaintiff to show a “prima facie” basis for his claims before “parting the curtain of confidentiality.” This approach somewhat resembles the approach taken in Securities & Exch. Commn. v Forma (117 FRD 516 [SD NY 1987]), which imposed a requirement upon an investigating government agency to have facts supporting a reasonable suspicion that an attorney was involved in illegal activity before soliciting testimony from the attorney protected by the attorney-client privilege.
Some courts have insisted on an offer of proof of a plaintiffs claims, because the duty of confidentiality would otherwise be easily overcome by boilerplate, pro forma allegations of attorney misconduct, as in Forma. Similarly, in the context of motions to disqualify counsel, the movant “must at a minimum provide the motion court with information sufficient to determine whether there exists a reasonable probability that DR 5-108 (A) (2) would be violated.” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638 [1998].)[6] These cases do not insist on the higher burden of the prima facie case that Gramercy advocates. In addition, the Court of Appeals in Jamaica Pub. Serv. Co. focused the inquiry on a reasonable probability of whether a violation of the duty of confidentiality would occur, not whether plaintiff could prevail against defendants. To require plaintiff to demonstrate a prima facie case of defendants’ liability before defendants could invoke the self-defense exception is unfair and impractical. First, it makes defendant’s ability to investigate and defend dependent on a showing made by plaintiff. Second, it requires plaintiff, at an early stage of the action, to come forward with a showing akin to that required on a motion for summary judgment, when much disclosure has not been completed. Some of the anticipated disclosure will likely implicate similar privilege and confidentiality issues.
*684 However, this dispute can be resolved without “parting the curtain-of confidentiality” at this time. The narrow issue of whether plaintiff had an attorney-client relationship with defendants can be separately tried. Although the issues of liability and damages are intertwined, the narrow issue of whether plaintiff had an attorney-client relationship with defendants can be tried separately from the other elements of plaintiffs theory of malpractice against defendants. Whether plaintiff had an attorney-client relationship with defendants when defendants were representing Gramercy is at the core of this dispute. Plaintiffs case against defendants would fail if plaintiff cannot establish the existence of an attorney-client relationship with defendants. (See e.g. Moran v Hurst, 32 AD3d 909 [2d Dept 2006].) The trial of this issue alone would be brief, and could resolve the entire case expeditiously and less expensively, which makes this issue amenable to a separate trial. (See Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 603.) If no attorney-client relationship existed during the operative period of time, then defendants would not need to obtain discovery from Gramercy as to the elements of plaintiff’s injury and damages. Discovery could be stayed as to the other elements of plaintiffs malpractice claims against defendants.
Thus, the court’s prior decision permitted defendants to testify as to any matters covered by attorney-client confidentiality between defendants and Gramercy, so that the parties could obtain discovery on the issue of whether an attorney-client relationship was formed between plaintiff and defendants. As discussed earlier, a confidentiality agreement is in place for safeguarding the information.[7]
This approach strikes the appropriate balance between defendants’ need to defend themselves in this action, the needs of Gramercy to protect sensitive information, and the importance of “parting the curtain of confidentiality” sparingly. To be clear, defendants would otherwise be entitled to an order compelling Gramercy to comply with the September 29, 2006 subpoena, under circumstances preserving confidentiality, had there been no other way of resolving the parties’ dispute that could obviate the need for the subpoenaed records.
Therefore, the court exercises its discretion to order, sua sponte, a separate trial on the issue of whether plaintiff had an *685 attorney-client relationship with defendants when defendants were representing the interests of Gramercy. (See Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 603.) Pursuant to CPLR 3103, the court, on its own initiative, hereby stays discovery on all other issues of plaintiffs claims of defendants’ alleged malpractice.
Conclusion
It is unfortunate that the attorneys themselves were unable to resolve this dispute collegially, whether by a confidentiality agreement, or by stipulating to a separate trial of the issue of the existence of defendants’ alleged attorney-client relationship with plaintiff. Nevertheless, given the importance of the duty of confidentiality, this court opts for an approach that may resolve the parties’ dispute without “parting the curtain of confidentiality” more than necessary. The importance of maintaining the delicate balance between the attorney’s duty of confidentiality and the attorney’s right of self-defense outweighs the additional expense generated from a separate trial of a narrow issue that is one element of plaintiffs liability case against defendants.
Accordingly, it is hereby ordered that there shall be a separate trial on the issue of whether plaintiff had an attorney-client relationship with defendants when defendants were representing the interests of Gramercy; and it is further ordered that discovery on all other issues concerning plaintiff’s claims of defendants’ alleged malpractice is stayed; and it is further ordered that defendants’ motion to compel nonparty Gramercy Advisors, LLC to comply with a subpoena duces tecum dated September 29, 2006 is denied, with leave to renew after the separate trial as to the above-specified issue.

. Gramercy’s counsel, on consent, submitted the following confidential documents under separate cover in opposition to defendants’ motion: affirmation of Sean F. O’Shea, dated January 26, 2007; memorandum of law of Gramercy Financial Group, LLC in opposition to orders to show cause, dated January 26, 2007.
This court has kept these documents together as a separate package and will return them to counsel for Gramercy Financial Group, LLC upon determination of this motion. A redacted copy of the opposition papers (redacted by Gramercy’s attorneys prior to submission) is being filed with this decision.

. As the Appellate Division made clear,
“the simple and better solution would seemingly have been for the nonparties served or the parties objecting to the form of the subpoenas to notify the party issuing the subpoenas of the defect (lack of the requisite notice), in which event the party issuing the subpoena could have served new subpoenas with the requisite notice rather than burden their clients and the courts with the time and expense of litigating the issue of the form of the subpoenas.” (Velez, 29 AD3d at 113.)

. Plaintiff claims that he wanted to depart Gramercy on December 31, 2002. Gramercy allegedly offered plaintiff three payout options for his departure: (1) payment pursuant to a formula in the operating agreement concerning an event of dissociation; (2) a $6 million payment; or (3) payment structured as an “earn out” rather than a purchase of plaintiffs interest, and providing for “reduced” interest. Hélie rejected the payout options. Gramercy acted to terminate plaintiffs membership interest in Gramercy “for cause” on July 15, 2002.
On July 29, 2002, Gramercy brought suit against plaintiff in the United States District Court for the Southern District of New York. The federal action was dismissed in favor of arbitration in April 2003. In June 2004, Hélie settled his claims against Gramercy, Johnston, and Koenigsberger, an original principal of Gramercy.
According to plaintiff, he did not receive the “market value” of his share in Gramercy in the settlement of his claims against Gramercy. According to defendants, plaintiffs settlement exceeded what he was entitled to under the Gramercy operating agreements and exceeded the market value of his interest in Gramercy.

. This proposition is questionable, especially given Gramercy’s understandable disquiet about revelation of its confidences and secrets by plaintiff, even in the course of litigation covered by a confidentiality agreement, and Gramercy’s insistence on a liquidated damages provision to punish a breach.

. The court finds nothing to suggest that defendants improperly used any confidences or secrets of Gramercy in issuing the subpoena (see Code of Professional Responsibility DR 4-101 [c] [4] [22 NYCRR 1200.19 (c) (4)]), because the September 29, 2006 attorney subpoena narrowed the scope of documents sought in an earlier subpoena served which Gramercy rejected as overly broad.

. Code of Professional Responsibility DR 5-108 (a) (2) (22 NYCRR 1200.27 [a] [2]) prohibits an attorney from using “any confidences or secrets of [a] former client except as permitted by section 1200.19(c) of this Part, or when the confidence or secret has become generally known.”

. Disclosure has been stayed, on consent, pending appeal of this court’s June 25, 2007 decision, and of this decision.